Daniel J. Wadley (10358)
wadleyd@sec.gov
Thomas M. Melton (4999)
meltont@sec.gov
Tanya Beard (9106)
beardt@sec.gov
Attorneys for Plaintiff
Securities & Exchange Commission
15 West South Temple Street, Suite 1800
Salt Lake City, Utah 84101
Tel.  801-524-5796
Fax: 801-524-5262

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>PLAINTIFF,<br><br>v.<br><br>AVANTI CAPITAL PARTNERS, LLC, a Utah Limited Liability Company, HIGHLAND RESIDENTIAL, LLC, a Utah Limited Liability Company, and IVAN WADE BROWN, an individual,<br><br>DEFENDANTS. | **COMPLAINT**<br><br>Civil No.:  2:12-cv-00788-BCW<br><br>Magistrate Judge Brooke C. Wells |

Plaintiff, Securities and Exchange Commission (the "Commission"), for its Complaint against Defendants Avanti Capital Partners, LLC, Highland Residential, LLC and Ivan Wade Brown (collectively, "Defendants") alleges as follows:

**INTRODUCTION**

1.      This matter involves a series of fraudulent and unregistered offerings in Avanti Capital Partners, LLC ("Avanti") and Highland Residential, LLC ("Highland") securities by Ivan Wade Brown ("Brown").  Highland and Avanti were solely controlled by Brown.

2.      By selling notes on behalf of Highland and Avanti, Brown raised over $27 million from at least 93 investors in an offering fraud.  Brown promised investors high annual returns in a little to no risk investment strategy making "bridge loans" to fund home loans and construction projects.

3.      Instead of using investor funds as he represented he would, Brown used a significant portion of investor funds for his personal use, to make Ponzi payments by taking funds from later investors to pay purported interest payments to earlier investors, to invest in properties other than ones he advised investors of, to invest in a movie production and to invest in other frauds, including a mineral refinery and a dubious contract scheme where he attempted to insure real estate above market value.

4.      Brown omitted to disclose to investors that their funds would be used for his personal use, invested in ways other than what he advised investors of, and used to make payments to other investors when the cash flow from business operations were insufficient to pay these investors the returns he promised them.

5.      Because some investors were being repaid from new investor funds, Brown's operation is a classic Ponzi scheme.

**JURISDICTION AND VENUE**

6.      This Court has subject matter jurisdiction by authority of Sections 20 and 22 of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. §§ 77t and 77v] and Sections 21 and

Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78u and 78aa].

7.      Defendants, directly and indirectly, singly and in concert, have made use of the means and instrumentalities of interstate commerce and the mails in connection with the transactions, acts and courses of business alleged herein, certain of which have occurred within the District of Utah.

8.      Venue for this action is proper in the District of Utah under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and under Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain of the transactions, acts, practices, and courses of business alleged in this Complaint took place in this district and because certain of the defendants reside in and transact business in this district.

9.      Defendants, unless restrained and enjoined by this Court, will continue to engage in the transactions, acts, practices, and course of business alleged herein and in transactions, acts, practices, and courses of business of similar purport and object.

10.      Defendants' conduct took place in connection with the offer, purchase and/or sale of promissory notes issued by Highland and Avanti, which are securities.

## DEFENDANTS

11.      **Avanti Capital Partners, LLC** ("Avanti") is a Utah limited liability company with its principal place of business in Alpine, Utah.  It is owned and controlled by Brown.

12.      **Highland Residential, LLC** ("Highland") is a Utah limited liability company with its principal place of business in Alpine, Utah.  It is owned and controlled by Brown.

13.      **Ivan Wade Brown** ("Brown"), age 45, is a resident of Alpine, Utah.  Brown is the managing member and the owner of Highland and Avanti.

## STATEMENT OF FACTS

## BACKGROUND

1.      Brown formed Highland in 2004 and Avanti in January 2007 for the purpose of raising capital to make real estate loans.

2.      Brown made all business decisions for Highland and Avanti and all decisions regarding the use of investor funds.

3.      Brown solicited investors to purchase Highland and Avanti promissory notes through the mail, email, and phone.

4.      Between October 2004 and January 2007, Brown solicited investors for Highland. Brown transitioned from Highland to Avanti in January 2007.

5.      Brown solely used oral representations regarding the nature of the Highland investment.  He never obtained audited financial statements for Highland and never offered investors any written materials regarding their investment.

6.      Brown told prospective Highland investors that he would use their funds to make "bridge loans," which he explained were loans to individuals purchasing and building residential homes until they could secure a conventional loan.

7.       Brown also told Highland investors that their investment contained little to no risk.  He told some investors that they "could not really lose any of [their] investment because everything was backed by 'hard assets' that could be liquidated if needed."  He represented to investors that they had "no need to worry" and that they "could not lose by investing in Highland."  He claimed that "the worst case scenario would be that [they] would lose 10% on [their] investment in the event anything went wrong."

8.      In January 2007, Brown hired counsel to help him form Avanti and draft a Private Placement Memorandum ("PPM").  The Avanti PPM stated essentially the same investment

4

purpose that Brown orally represented to Highland investors, that Avanti made "loans to businesses and individuals, primarily as 'bridge' loans or construction loans for real estate projects."

9.      Brown sold approximately $13 million in Highland notes to at least 55 investors from October 2004 to January 2007.

10.     Brown sold almost $14 million in Avanti notes from January 2007 to May 2008.

11.     On January 19, 2007, Brown sent a letter to the Highland investors advising them that their investment was now in the name of a new entity, Avanti.  He acknowledged that investments were simply rolled into a new company, stating that "Avanti Capital Partners, LLC is the name of the new entity established to manage investor funds and to underwrite and fund our real estate loans."

12.     Brown's offering of Highland and Avanti notes was one continuous offering, for the same basic business, and under Brown's sole control.  Each Highland investor simply received the Avanti documents and a new promissory note substituting Avanti for Highland as the payor.  Brown orally advised investors who voiced concern over the Avanti transition "not to worry," because their "investment was still with Highland."

13.     Brown's January 19, 2007 letter to Highland investors also acknowledged deficiencies in the Highland offering, by stating a new commitment to ensure "[c]ompliance with federal and state securities regulation" and by enclosing the PPM for Avanti, an Investor Suitability Questionnaire, a Subscription Agreement, and a Rescission Offer.

14.     Although Brown stated his desire to comply with federal and state securities regulations, his transition to Avanti fell short of doing so.  For one thing, the disclosure documents were given to investors after the investments had already been made, so the

disclosure documents were not provided to investors in accordance with federal securities laws and the fundamental purpose of disclosure—to enable investors to make informed decisions before they invest—was not accomplished.  In addition, Brown failed to provide investors with audited financial statements of Highland or Avanti.

15.     The Highland and Avanti offerings were not registered with the Commission.

16.     In total, Brown raised over $27 million for Highland and Avanti from at least 93 investors in multiple states, including Utah, California, Georgia, Oregon, Virginia, Colorado, Idaho and Nevada.

## PONZI PAYMENTS

17.     Brown made Ponzi payments to investors.

18.     For example, on August 30, 2006, the cash balance at Highland was less than $10,000.  From August 31 to September 8, 2006, Highland's only significant source of deposits was $530,000 that Brown raised from five investors.  Brown used those funds during that same period to pay $69,000 in "returns" to investors, almost $130,000 for principal repayments to investors, and $40,000 to fund his personal draws.

19.     At the beginning of November 2006, the cash balance at Highland was less than $150,000.  During the next two months, Brown raised $2.2 million from investors but only used $720,000 to make investments.  Of the remaining $1.5 million raised from investors, Brown used $300,000 to pay investor "returns," $1 million for investor principal repayments and over $300,000 for personal draws.  At the end of December, the remaining cash balance was less than $50,000.

20.     From November 28 to December 1, 2006, Brown received $507,000 from four investors.  Highland did not have any other sources of funds during this period and no other

deposits were made.  Prior to receiving these deposits, Highland's cash balance was less than $10,000.  From November 29 to December 4, Brown used almost all of those funds to finance a $200,000 personal draw, to pay $165,000 in principal repayments to investors, and to pay $33,000 in "interest payments" to investors.

21.     On November 16, 2007, the cash balance at Avanti was less than $110,000, which consisted almost entirely of a $100,000 investor deposit.  From November 17, 2007 to March 31, 2008, Brown raised an additional $2.9 million from investors but only used $1.7 million for investments.  Of the remaining $1.2 million, $530,000 was used to make "interest" payments to investors, $370,000 was used to make investor principal repayments and Brown took over $270,000 in draws.

22.     On March 3, 2008, an Avanti investor deposited $150,000 into Avanti's bank account.  This investment was deposited when Avanti's cash balance was a little over $20,000. Avanti received no other deposits on that day, but that same day Brown issued over $230,000 in "interest" payments to investors.  Despite Brown's representation to this investor that his funds would be used to purchase Avanti assets, Brown used this investment entirely for Ponzi payments.

## MISREPRESENTATIONS AND OMISSIONS

23.     Brown made a number of misrepresentations and omissions in the Highland and Avanti offerings.

24.     He grossly misstated the amount of risk investors took when investing with Highland and Avanti.  While he promised investors they could not lose their money because of the collateral he obtained on the "bridge loans" and other precautions he took, investors were

actually funding high risk loans that ultimately failed to perform and caused substantial losses to investors.

25.     In some instances, Brown specified in writing that investor funds would be used to make a loan on a specific property, but then used these funds to make loans on different properties.  In these instances, Brown advised investors about the specific details of their investment, including the amount of the loan that would be made, the property address, the credit score of the borrower, and the terms of the loan.  These representations were false and Brown used investor money to fund loans made on other properties or for other uses.

26.     Brown told Highland investors that their funds were used exclusively to make "bridge loans."  In fact, Brown used investor funds to make payments to earlier investors and for his personal use.

27.     For example, Brown used $12,000 of Highland investor funds to pay a personal credit card bill and approximately $970,000 to purchase a luxury home in Alpine, Utah.

28.     The Avanti PPM disclosed that Brown would be compensated for his services by receiving "the vast majority of the origination fees received by the Company upon the making of loans" and by receiving "profit distributions" where loans made by Avanti produce revenues that "exceed its expenses and the debt service to the Noteholders and others."  Rather than compensate himself in this manner, Brown at times used investor monies to directly pay for his personal expenses.

29.     For instance, Brown used Avanti funds to make a $120,000 down payment on his residence.

30.    He used another $505,000 of Avanti funds to purchase a lot that was recorded in the Avanti accounting records as an investment property, but title to the property was recorded in Brown's name.

31.    Brown approached one investor with an investment opportunity, telling the investor that he had a borrower with a perfect FICO credit score that had approximately $1 million in financial assets, which was, according to Brown, "more than enough to pay us off completely if it were necessary."  He failed, however, to disclose that the property was a vacation home in Boca Raton, Florida that he and at least one other person were purchasing for their personal use.  The investor ultimately invested $200,000 with Brown based on this misrepresentation.

32.    At another point, Brown approached a new investor with an opportunity to invest in a specific hard money loan.  He went as far as emailing to the investor the address of the underlying property and the borrower's FICO credit score.  After obtaining the investor's money, Brown used the investor's funds for an entirely different loan.  Then, 30 days later, when the investor asked for a status update about the loan, Brown informed the investor that his money was now in a different property, again citing the address of the property.  Brown failed to inform the investor that the property he invested in was a home that Brown had personally owned and which he had just sold, apparently using the investor's principle to make a loan to the buyer.

33.    Brown also failed to disclose that he was using investor funds to make other investments.

34.    For example, of the $1.7 million used for investments during the November 2007 through March 2008 Ponzi period, Brown invested $650,000 with Wylie Rhodes to produce a

movie.  Brown did not tell investors that their funds would be used in this manner.  That movie did not produce any revenue and Avanti investors never saw any return on the investment.

35.     Also during the November 2007 through March 2008 Ponzi period, Brown invested at least $225,000 in an airplane.

36.     Contrary to what Brown had told investors he would do with their funds, Brown then contributed the airplane, along with the proceeds from the Boca Raton property discussed above, to DGB Enterprises ("DGB"), a company supposedly operating a mineral refinery.  In all, Brown contributed $1.25 million to DGB.  In return, DGB promised an unreasonably high return of $11 million in just nine months, for an annualized return of 1040%.  DGB turned out to be a fraudulent scheme with no actual mineral refinery operations that paid no returns to Brown or Avanti investors.

37.     Brown failed to disclose to Avanti investors that he was using their money to invest in a mineral refinery.

38.     Brown also used at least $28,000 in Avanti funds to purchase what he thought were real estate insurance contracts, called "LIVE-GRIP" contracts.  These contracts claimed to protect the value of Avanti's properties in case the real estate values went down.  These contracts claimed to offer Brown a high value for his properties even if the market value of the properties plummeted.  This investment also turned out to be a fraud and the LIVE-GRIP contracts offered no protection for Avanti's real property and simply took the money Brown provided without offering Brown anything of value in return.  Brown's entire investment in the LIVE-GRIP contracts was lost.

39.     The misrepresentations and omissions detailed above are material to a reasonable investor.

40.     Brown acted with scienter.  He controlled Highland and Avanti's bank accounts and authorized all transfers of funds.  He made all business decisions for both Highland and Avanti.  He also knew that the representations he made to investors regarding the use of investor funds were false.

## FIRST CAUSE OF ACTION
## FRAUD IN THE OFFER AND SALE OF SECURITIES
### Violations of Section 17(a)(2)
### [15 U.S.C. § 77q(a)(2)]

1.      The Commission realleges and incorporates by reference the allegations contained in the paragraphs above.

2.      Defendants, and each of them, by engaging in the conduct described above, directly and indirectly, in the offer and sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, obtained money or property by means of untrue statements of material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

3.      By reason of the foregoing, Defendants, and each of them, directly or indirectly, violated, and unless restrained and enjoined will continue to violate, Section 17(a)(2) [15 U.S.C. §§ 77q(a)(2)].

## SECOND CAUSE OF ACTION
## FRAUD IN CONNECTION WITH THE PURCHASE AND
## SALE OF SECURITIES
### Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)]

4.      The Commission realleges and incorporates by reference the allegations contained in the paragraphs above.

5.      Defendants, and each of them, by engaging in the conduct described above, directly or indirectly, by the use of means or instrumentalities of interstate commerce or use of the mails, in connection with the purchase or sale of securities, with scienter, made untrue statements of material fact or omitted to state a material fact necessary in order to make statements made, in light of the circumstances under which they were made, not misleading.

6.      By reason of the foregoing, Defendants, and each of them, violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)].

## THIRD CAUSE OF ACTION
## OFFER AND SALE OF UNREGISTERED SECURITIES
### Violation of Sections 5(a) and (c) of the Securities Act [15 U.S.C. § 77e(a) and (c)]

7.      The Commission realleges and incorporates by reference the allegations contained in the paragraphs above.

8.      Defendants, and each of them, by engaging in the conduct described above, directly or indirectly, through use of the means or instruments of transportation or communication in interstate commerce or the mails, offered to sell or sold securities or, directly or indirectly, carried such securities through the mails or in interstate commerce, for the purpose of sale or delivery after sale.

9.      No registration statement has been filed with the Commission or has been in effect with respect to these securities.

10.     By reason of the foregoing, Defendants, directly or indirectly violated, and unless enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court:

### I

Issue findings of fact and conclusions of law that Defendants committed the violations charged herein.

### II

Issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure orders that temporarily, preliminarily and permanently enjoin Avanti, Highland, Brown and their officers, agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from engaging in transactions, acts, practices, and courses of business described herein, and from engaging in conduct of similar purport and object in violation of Sections 5(a), 5(c) and 17(a) of the Securities Act, and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

### III

Enter an order directing Defendants, and each of them, to pay civil money penalties pursuant to Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act.

### IV

Enter an order directing Defendants to disgorge all ill-gotten gains received during the period of violative conduct and pay prejudgment interest on such ill-gotten gains.

**V**

Grant such further equitable relief as this Court deems just, appropriate, and necessary, including, but not limited to, a freeze of assets and the appointment of a receiver for Avanti and Highland.

**VI**

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

Dated August 13, 2012.

Respectfully submitted,


 /s/Daniel Wadley
Daniel Wadley (Utah Bar No. 10358)
wadleyd@sec.gov
Thomas M. Melton (Utah Bar No. 4999)
meltont@sec.gov
Tanya G. Beard (Utah Bar No. 9106)
beardt@sec.gov
Attorneys for Plaintiff
Securities and Exchange Commission
15 West South Temple, Suite 1800
Salt Lake City, Utah 84101
Tel:  801-524-5796
Fax:  801-524-5262